FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Jun 10, 2020

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JEFFREY M.,[1] <br><br> Plaintiff, <br><br> v. <br><br> ANDREW M. SAUL, the Commissioner of Social Security, <br><br> Defendant. | No.    4:19-CV-5215-EFS <br><br> **ORDER DENYING PLAINTIFF'S SUMMARY-JUDGMENT MOTION AND GRANTING DEFENDANT'S SUMMARY-JUDGMENT MOTION** |

Before the Court are the parties' cross summary-judgment motions.[2] Plaintiff Jeffrey M. appeals the denial of benefits by the Administrative Law Judge (ALJ). He alleges the ALJ erred by 1) improperly weighing the medical opinions; 2) discounting Plaintiff's symptom reports; 3) improperly determining that the impairments did not meet or equal a listing; and 4) improperly assessing Plaintiff's residual functional capacity and therefore relying on an incomplete hypothetical at

---

[1] To protect the privacy of the social-security Plaintiff, the Court refers to him by first name and last initial or by "Plaintiff." *See* LCivR 5.2(c).

[2] ECF Nos. 16 & 17.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 1

step five. In contrast, Defendant Commissioner of Social Security asks the Court to affirm the ALJ's decision finding Plaintiff not disabled. After reviewing the record and relevant authority, the Court denies Plaintiff's Motion for Summary Judgment, ECF No. 16, and grants the Commissioner's Motion for Summary Judgment, ECF No. 17.

## I.    Five-Step Disability Determination

A five-step sequential evaluation process is used to determine whether an adult claimant is disabled.[3] Step one assesses whether the claimant is currently engaged in substantial gainful activity.[4] If the claimant is engaged in substantial gainful activity, benefits are denied.[5] If not, the disability-evaluation proceeds to step two.[6]

Step two assesses whether the claimant has a medically severe impairment, or combination of impairments, which significantly limits the claimant's physical

---

[3] 20 C.F.R. § 416.920(a).

[4] *Id.* § 416.920(a)(4)(i).

[5] *Id.* § 416.920(b).

[6] *Id.*

1

2

or mental ability to do basic work activities.[7] If the claimant does not, benefits are denied.[8] If the claimant does, the disability-evaluation proceeds to step three.[9]

3

4

5

6

7

Step three compares the claimant's impairments to several recognized by the Commissioner to be so severe as to preclude substantial gainful activity.[10] If an impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled.[11] If an impairment does not, the disability-evaluation proceeds to step four.

8

9

10

11

12

Step four assesses whether an impairment prevents the claimant from performing work he performed in the past by determining the claimant's residual functional capacity (RFC).[12] If the claimant is able to perform prior work, benefits are denied.[13] If the claimant cannot perform prior work, the disability-evaluation proceeds to step five.

13

14

15

Step five, the final step, assesses whether the claimant can perform other substantial gainful work—work that exists in significant numbers in the national

16

17

18

19

20

21

22

23

———————————

[7] 20 C.F.R. § 416.920(a)(4)(ii).

[8] *Id.* § 416.920(c).

[9] *Id.*

[10] *Id.* § 416.920(a)(4)(iii).

[11] *Id.* § 416.920(d).

[12] *Id.* § 416.920(a)(4)(iv).

[13] *Id.*

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 3

1

2

economy—considering the claimant's RFC, age, education, and work experience.[14] If so, benefits are denied. If not, benefits are granted.[15]

3

4

5

The claimant has the initial burden of establishing entitlement to disability benefits under steps one through four.[16] At step five, the burden shifts to the Commissioner to show that the claimant is not entitled to benefits.[17]

6

## II.    Factual and Procedural Summary

7

8

9

10

Plaintiff filed a Title XVI application, alleging an amended disability onset date of March 2, 2016.[18] His claim was denied initially and upon reconsideration.[19] An administrative hearing was held before Administrative Law Judge Lori Freund.[20]

11

In denying Plaintiff's disability claim, the ALJ made the following findings:

12

13

- Step one: Plaintiff had not engaged in substantial gainful activity since March 2, 2016, the amended alleged onset date;

14

15

16

[14] 20 C.F.R. § 416.920(a)(4)(v); *Kail v. Heckler*, 722 F.2d 1496, 1497-98 (9th Cir. 1984).

17

[15] 20 C.F.R. § 416.920(g).

18

19

[16] *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007).

[17] *Id.*

20

[18] AR 196-210.

21

[19] AR 122-25 & 129-31.

22

[20] AR 35-83.

23

- Step two: Plaintiff had the following medically determinable severe impairments: degenerative disc disease of the lumbar spine/lumbago; obesity; unspecified anxiety disorder; unspecified depressive disorder; and borderline intellectual functioning;

- Step three: Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments;

- RFC: Plaintiff had the RFC to perform light work, except Plaintiff:

> can occasionally climb ramps, stairs, ladders, ropes and scaffolds, can occasionally stoop, kneel, crouch and crawl, should avoid all unprotected heights, should avoid even moderate exposure to hazardous machinery, can do simple, repetitive tasks, can handle occasional changes in work setting, can occasionally exercise judgment or make decisions on the job, and would do best working away from the general public but could have occasional, superficial interaction with coworkers and supervisors.

- Step four: Plaintiff was not capable of performing past relevant work; and

- Step five: considering Plaintiff's RFC, age, education, and work history, Plaintiff could perform work that existed in significant numbers in the national economy, such as bench assembler, canner worker, and warehouse checker.[21]

When assessing the medical-opinion evidence, the ALJ gave:

---

[21] AR 13-34.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 5

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

- great weight to the examining opinion of Kirsten Nestler, M.D. and the reviewing opinions of Cynthia Smith, M.D. and James Irwin M.D.;

- substantial weight to the testifying medical opinion of John Morse, M.D.; and

- little weight to the examining opinions of N.K. Marks, Ph.D. and Philip Barnard, Ph.D.; the reviewing opinions of Steven Johansen, Ph.D. and Steven Haney, M.D.; and the treating opinion of Chad Longmaker, M.Ed., LMHC.[22]

The ALJ also found that Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, but that his statements concerning the intensity, persistence, and limiting effects of those symptoms were not entirely consistent with the medical evidence and other evidence in the record.[23]

Plaintiff requested review of the ALJ's decision by the Appeals Council, which denied review.[24] Plaintiff timely appealed to this Court.

---

[22] AR 23-26.

[23] AR 21-23.

[24] AR 1-3.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 6

1

2

### III.    Standard of Review

A district court's review of the Commissioner's final decision is limited.[25] The Commissioner's decision is set aside "only if it is not supported by substantial evidence or is based on legal error."[26] Substantial evidence is "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[27] Moreover, because it is the role of the ALJ and not the Court to weigh conflicting evidence, the Court upholds the ALJ's findings "if they are supported by inferences reasonably drawn from the record."[28] The Court considers the entire record as a whole.[29]

---

[25] 42 U.S.C. § 405(g).

[26] *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).

[27] *Id.* at 1159 (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)).

[28] *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).

[29] *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (The court "must consider the entire record as whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion," not simply the evidence cited by the ALJ or the parties.); *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998) ("An ALJ's failure to cite specific evidence does not indicate that such evidence was not considered[.]").

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

Further, the Court may not reverse an ALJ decision due to a harmless error.[30] An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination."[31] The party appealing the ALJ's decision generally bears the burden of establishing harm.[32]

## IV.    Analysis

**A.    Medical Opinions: Plaintiff fails to establish error.**

Plaintiff challenges the ALJ's assignment of little weight to the examining opinions of Dr. N.K. Marks and Dr. Philip Barnard and the reviewing opinion of Dr. Steven Johansen. As discussed below, the Court finds Plaintiff fails to establish that the ALJ erred.

1.    <u>Standard</u>

The weighing of medical-source opinions is dependent upon the nature of the medical relationship, i.e., 1) a treating physician; 2) an examining physician who examines but did not treat the claimant; and 3) a reviewing physician who neither treated nor examined the claimant.[33] Generally, more weight is given to the opinion of a treating physician than to an examining physician's opinion and both

---

[30] *Molina*, 674 F.3d at 1111.

[31] *Id.* at 1115 (quotation and citation omitted).

[32] *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

[33] *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014).

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 8

treating and examining opinions are to be given more weight than the opinion of a reviewing physician.[34]

When a treating physician's or evaluating physician's opinion is not contradicted by another physician, it may be rejected only for "clear and convincing" reasons, and when it is contradicted, it may be rejected only for "specific and legitimate reasons" supported by substantial evidence.[35] A reviewing physician's opinion may be rejected for specific and legitimate reasons supported by substantial evidence, and the opinion of an "other" medical source[36] may be rejected for specific and germane reasons supported by substantial evidence.[37] The opinion of a reviewing physician serves as substantial evidence if it is supported by other independent evidence in the record.[38]

---

[34] *Id.*; *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995).

[35] *Lester*, 81 F.3d at 830.

[36] *See* 20 C.F.R. § 404.1502 (For claims filed before March 27, 2017, acceptable medical sources are licensed physicians, licensed or certified psychologists, licensed optometrists, licensed podiatrists, qualified speech-language pathologists, licensed audiologists, licensed advanced practice registered nurses, and licensed physician assistants within their scope of practice—all other medical providers are "other" medical sources.).

[37] *Molina*, 674 F.3d at 1111; *Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2009).

[38] *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995).

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 9

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

1.    <u>Dr. Marks and Dr. Johansen</u>

On June 16, 2016, Dr. Marks psychologically examined Plaintiff and diagnosed Plaintiff with unspecified depression, generalized anxiety disorder, agoraphobia, unspecified cannabis-related disorder and history of polysubstance abuse, and attention deficit disorder.[39] Dr. Marks opined that Plaintiff was:

- moderately limited in his abilities to learn new tasks; perform routine tasks without special supervision; make simple work-related decisions; and ask simple questions or request assistance;

- markedly limited in his abilities to communicate and perform effectively in a work setting; complete a normal workday and work week without interruptions from psychologically based symptoms; and set realistic goals and plan independently; and

- severely limited in his abilities to understand, remember, and persist in tasks by following detailed instructions, and adapt to changes in a routine work setting.

On June 20, 2016, Dr. Johansen reviewed Dr. Marks' opinion and June 2016 medical records authored by Nurse Hannah Rhaun[40] that Dr. Marks also reviewed.[41] Dr. Johansen largely agreed with Dr. Marks' findings and opined that

---

[39] AR 373-78.

[40] AR 366-71.

[41] AR 360-64 & 373.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

Plaintiff would be limited to sedentary work with postural, environmental, and motor skill restrictions.

The ALJ gave little weight to these opinions because they are inconsistent with Dr. Marks' largely unremarkable objective psychological findings, the basis for the opinions is unexplained, and Dr. Marks and Dr. Johansen did not have the opportunity to review the longitudinal medical evidence, which is inconsistent with their opinions.[42] These findings are specific and legitimate reasons to discount Dr. Marks' and Dr. Johansen's contested opinions and are supported by substantial evidence.

First, the ALJ rationally found that Dr. Marks' and Dr. Johansen's opinions, which overall indicated a moderate severity rating, are inconsistent with Dr. Marks' largely unremarkable psychological findings. An ALJ may evaluate whether a medical opinion is supported by the physician's observations and findings.[43] Here, Dr. Marks indicated that Plaintiff lived on his own and was able to take care of his own activities of daily living, had well organized and progressive speech, was cooperative with good eye contact and full affect, was orientated, had an "okay" immediate memory though poor long-term memory, and had a fund of knowledge, abstract thought, insight, judgment, and concentration that were

---

[42] AR 25.

[43] *See Lingenfelter*, 504 F.3d at 1042; *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007).

within normal limits although he had moderate difficulty maintaining focus with multi-tasking.[44] These largely normal observations and findings are inconsistent with Dr. Marks' and Dr. Johansen's markedly limited opinions.

Dr. Marks did indicate that Plaintiff's WHODAS 2.0 scores indicated severe interference with activities of daily living due to back pain and related difficulties with focus and memory problems.[45] However, as discussed below the results of these test scores are inconsistent with Plaintiff's reported activities of daily living, i.e., that he is able to live on his own, mow his parents' yard, and care for ailing grandparents. In addition, Dr. Marks observed that Plaintiff's anxiety was reduced after a few minutes into the examination. The ALJ's finding that Dr. Marks' and Dr. Johansen's markedly limited opinions are inconsistent with Dr. Marks' observations and findings is supported by substantial evidence.

Second, the ALJ rationally found that Dr. Marks and Dr. Johansen did not sufficiently explain the basis for their opinions. A medical opinion may be discounted if it is conclusory and inadequately supported.[46] As explained above, the noted findings are largely benign. Neither Dr. Marks nor Dr. Johansen explained

---

[44] AR 447-50.

[45] AR 447.

[46] *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) (recognizing that a medical opinion may be rejected if it is conclusory or inadequately supported).

why Plaintiff's anxiety and depression—and other diagnosed conditions—would markedly limit his ability to work, particularly considering Dr. Marks' largely "normal" observations and findings. In addition, Nurse Hannah Rhaun's reviewed records fail to support Dr. Marks' and Dr. Johansen's markedly limited opinions. Based on the diagnosed conditions, Nurse Rhaun opined that Plaintiff was unable to meet the demands of sedentary work.[47] However, the imaging relied on by Nurse Rhaun showed only mild findings in the thoracic spine and no acute abnormality in the lumbar spine.[48] Moreover, Nurse Rhaun observed:

- "Adequately aligned spine with nearly normal gait and posture, no spinal deformity, symmetry of spinal muscles with diffuse tenderness L1-2. Worse on right side than left. Decreased range of motion upon twisting side to side, bending forward to touch toes and arching back. No muscular spasms. Normal muscular development. No significant changes since last visit. Extremities with no significant deformity or joint abnormality. No clubbing, cyanosis or edema;" and

- "No evidence of any abnormal thought processes. Fair insight."[49]

The ALJ rationally found that Dr. Rhaun's observations did not support Dr. Marks' and Dr. Johansen's markedly limited opinions. Moreover, to the extent that

---

[47] AR 366-68.

[48] AR 439.

[49] AR 370.

Plaintiff had difficulty with multi-tasking tasks, the RFC limits Plaintiff to simple, repetitive tasks, with occasional changes in the work setting, and occasional exercise of judgment or decision making, while working away from the general public and occasional, superficial interaction with coworkers and supervisors.[50]

Finally, the ALJ rationally found that Dr. Marks' and Dr. Johansen's opinions were inconsistent with the longitudinal medical record, which they did not have an opportunity to review. An ALJ may give more weight to an opinion that is based on more record review and is supported by the longitudinal evidence.[51] Here, the ALJ highlighted that Dr. Marks and Dr. Johansen did not review Dr. Kirsten Nestler's 2016 psychological evaluation,[52] nor the other largely normal mental status findings, many of which are contained in the psychotherapy session and

---

[50] AR 21; *see Rounds v. Comm'r of Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015) (requiring the ALJ to only include those functional limitations in the RFC that are supported by the record).

[51] *See* 20 C.F.R. § 404.1527(c)(6) (specifying that the extent to which a medical source is "familiar with the other information in [the claimant's] case record" is relevant in assessing the weight to give that opinion); *Lingenfelter*, 504 F.3d at 1042 (recognizing that the ALJ is to consider the consistency of the medical opinion with the record as a whole and assess the amount of relevant evidence that supports the opinion); *Andrews*, 53 F.3d at 1041 (same).

[52] AR 354-59.

pain management session notes.[53] Dr. Nestler expressed concern that Plaintiff exaggerated his symptoms given his inconsistent statements.[54] The session notes, while often indicating that Plaintiff was anxious and sometimes indicating that his judgment and insight were poor, were otherwise largely normal. On this record, the ALJ's finding that Dr. Marks' and Dr. Johansen's markedly limited opinions were inconsistent with the longitudinal record is supported by substantial evidence and is a specific and legitimate reason to discount their opinions.

Plaintiff fails to establish the ALJ erred in her weighing of Dr. Marks' or Dr. Johansen's opinions.

2.    Dr. Barnard

On May 31, 2018, psychologist Dr. Barnard examined Plaintiff.[55] Dr. Barnard diagnosed Plaintiff with borderline intellectual functioning, persistent depressive disorder, and generalized anxiety disorder, and opined that Plaintiff is limited as follows:

- moderately limited in his abilities to understand, remember, and persist in tasks by following very short and simple instructions; adapt

---

[53] *See, e.g.*, AR 380-83, 469-720, & 810-50.

[54] AR 358 ("I suspected he might be exaggerating some of his mental health symptoms during the interview and was inconsistent at times.").

[55] AR 805-09.

to changes in a routine work setting; and set realistic goals and plan

independently; and

- markedly limited in his abilities to understand, remember, and persist

in tasks by following detailed instructions; perform activities within a

schedule, maintain regular attendance, and be punctual within

customary tolerances without special supervision; learn new tasks;

perform routine tasks without special supervision; make simple work-

related decisions; be aware of normal hazards and take appropriate

precautions; ask simple questions or request assistance; communicate

and perform effectively in a work setting; maintain appropriate

behavior in a work setting; and complete a normal workday and

workweek without interruptions from psychologically based

symptoms.

The ALJ discounted Dr. Barnard's opinion because 1) the longitudinal

record—which Dr. Barnard did not have the opportunity to review—does not

support such significant limitations resulting from the diagnosed borderline

intellectual functioning (BIF); and 2) the majority of the objective psychological

findings and objective medical evidence do not support the assessed limitations.[56]

The ALJ's findings are supported by substantial evidence and are specific and

legitimate reasons to discount Dr. Barnard's contested markedly limiting opinion.

---

[56] AR 25.

1

2          As to Plaintiff's BIF, the ALJ rationally found the longitudinal record does

3    not support a finding that Plaintiff's intellectual limitations significantly limit his

4    ability to function beyond those limitations incorporated in the RFC. For instance,

5    the longitudinal medical record reflects that evaluators and providers generally

6    observed Plaintiff displaying average intelligence.[57] And although Plaintiff was

7    held back one year in elementary school, he did not receive special education and

8    ultimately, after dropping out of high school his senior year, he obtained his GED.

9    In addition, Plaintiff can live alone and took care of his grandparents when they

10   were ailing.[58] It is the ALJ's role to weigh conflicting evidence, including assessing

11   the extent to which Plaintiff's intellectual functioning was affected by his reported

12   pain and medication side effects. On this record, the ALJ rationally discounted Dr.

13   Barnard's opinion after weighing the conflicting evidence as to Plaintiff's

14   intelligence and functioning.

15          The ALJ also rationally found that the longitudinal record reflected

16   generally normal psychological findings and minimal clinical signs of anxiety and

17

18   _____

19   [57] *See, e.g.*, AR 343 ("Intelligence appears average"); AR 453 ("Intelligence estimate:

20   Average"); AR 474, 478, 482, 486, & 489 (same).

21   [58] AR 355 & 374. *See also Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001)

22   (recognizing that an ALJ may discount a medical opinion that is inconsistent with

23   the claimant's level of activity).

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 17

depression on mental status examinations.[59] Whether a medical opinion is consistent with the longitudinal record is a factor for the ALJ to consider.[60] Here, the ALJ highlighted that Dr. Barnard's opinion, like Dr. Marks' and Dr. Johansen's opinions, is inconsistent with the unremarkable objective psychological findings. While several treatment notes indicate Plaintiff was anxious, they otherwise indicate that he was able to communicate and cooperate with providers. When viewed overall, the ALJ rationally interpreted the largely benign treatment notes as being inconsistent with Dr. Barnard's markedly limited opinion. This finding is supported by substantial evidence. Moreover, the RFC rationally accounts for those exertional and nonexertional limitations that are supported by the record.

In summary, Plaintiff fails to establish the ALJ erred when weighting the conflicting medical evidence and opinions.

**B.    Step Three (Listings): Plaintiff fails to establish error.**

Plaintiff contends the ALJ erred by finding that Plaintiff's impairments did not meet or medically equal Listings 1.04, 12.04, 12.05, 12.06, and 12.11, singly or in combination, and by failing to adequately develop the record. As explained below, the ALJ's no-listing finding was supported by substantial evidence and the record was adequate for the ALJ to make this finding.

---

[59] AR 25.

[60] See *Lingenfelter*, 504 F.3d at 1042 (recognizing that the ALJ is to consider the consistency of the medical opinion with the record as a whole).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

      1.    <u>Spinal Listings</u>

Listing 1.04A is satisfied if there is a disorder of the spine, such as degenerative disc disease, resulting in compromise of the nerve root or the spinal cord with evidence of nerve root compression characterized by (a) neuro-anatomic distribution of pain, (b) limitation of motion of the spine, (c) motor loss (muscle weakness or atrophy with associated muscle weakness) accompanied by sensory or reflex loss, and (d), if there is involvement of the lower back, positive straight-leg raising test (sitting and supine).[61] Listing 1.04B is satisfied if the claimant has spinal arachnoiditis as well as additional symptoms, and Listing 1.04C is satisfied if the claimant has lumbar spinal stenosis resulting in pseudoclaudication, manifested by chronic nonradicular pain and weakness, resulting in inability to ambulate effectively.[62]

Here, the ALJ's finding that Plaintiff did not have spinal arachnoiditis and that he ambulated effectively are supported by substantial evidence[63]—Listings 1.04B and 1.04C were not satisfied. And while Plaintiff often had positive straight-leg raises, the ALJ rationally found that the longitudinal medical record did not reflect motor loss accompanied by sensory or reflex loss.[64] Plaintiff's physical

---

[61] 20 C.F.R. Ch. III Part 404, Subpt. P, App. 1, Listing 1.04A.

[62] 20 C.F.R. Ch. III Part 404, Subpt. P, App. 1, Listings 1.04B & C.

[63] *See, e.g.*, AR 655, 659, 662, 665, 669, 677, 681, 684, & 687 (noting normal gait).

[64] *See, e.g.*, AR 635-70 & 835-45.

examinations routinely reflected full lower and upper extremity strength and often reflected full range of movement.

In addition, there was no need for the ALJ, on this record, to order an orthopedic examination.[65] Contrary to Plaintiff's argument, Dr. Morse did not testify that an orthopedic examination was necessary; instead Dr. Morse testified that he was able to render an opinion as to Plaintiff's physical limitations on the then-current record's objective findings.[66] And while on a different record it may be error for a testifying medical expert to not consider the observations of a physical therapist or a pain specialist, Plaintiff failed to establish that the ALJ's weighing of the contested medical opinions was erroneous, given that the longitudinal medical record largely reflected fairly minimal physical and mental symptoms—symptoms that were adequately reflected in the RFC.

2.    Cognitive Listings

Listing 12.05 applies to intellectual disorders characterized by significantly subaverage general intellectual functioning, significant deficits in current adaptive functioning, and manifestation of the disorder before age 22.[67] Listing 12.11

-----

[65] *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001) ("An ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence.").

[66] AR 46-51.

[67] 20 C.F.R. 404, Subpart P, App. 1, Listing 12.05.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

includes neurodevelopmental disorders, such as borderline intellectual functioning, which are often characterized by onset during the developmental period.[68] Signs or symptoms may include underlying abnormalities in cognitive processing, deficits in attention or impulse control, low frustration tolerance, excessive or poorly planned motor activity, difficulty with organizing, repeated accidental injury, and deficits in social skills.[69]

Plaintiff's cognitive-listings argument is based on his above-arguments that the ALJ failed to give full weight to Dr. Barnard's findings about Plaintiff's borderline intellectual functioning. For the reasons given above, the Court finds the ALJ rationally discounted Dr. Barnard's findings, as well as Dr. Marks' and Dr. Johansen's findings, because the longitudinal record did not support these opinions. On this record, which included several observations of average-intellectual functioning and given Plaintiff's activities of daily living, the ALJ did not error by not ordering a full set of psychological tests and finding Listings 1.04, 12.04, 12.05, 12.06, and 12.11.[70]

---

[68] 20 C.F.R. 404, Subpart P, App. 1, Listing 12.11.

[69] *Id.*

[70] *See Mayes*, 276 F.3d at 459-60 (requiring the ALJ to develop the record if the evidence is ambiguous or inadequate to properly evaluate the evidence).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

      3.     <u>Anxiety and Depression Listings</u>

Listing 12.04 disorders, which include depressive, bipolar, and related disorders, are "characterized by an irritable, depressed, elevated, or expansive mood, or by a loss of interest or pleasure in all or almost all activities, causing a clinically significant decline in functioning."[71] Symptoms and signs can include "feelings of hopelessness or guilt, suicidal ideation, a clinically significant change in body weight or appetite, sleep disturbances, an increase or decrease in energy, psychomotor abnormalities, disturbed concentration, pressured speech, grandiosity, reduced impulse control, sadness, euphoria, and social withdrawal."[72] The impairment must also meet paragraph B and C criteria. Paragraph B criteria are met if the impairment results in at least two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration.[73] Paragraph C criteria are met if the mental disorder is serious and persistent, i.e., there is a medically documented history of the existence of the disorder over a period of at least two years and the claimant relies on ongoing medical treatment to diminish the

---

[71] 20 C.F.R. Pt. 404, Subpt. P, App 1.

[72] *Id*. at Listing 12.04.

[73] 20 C.F.R. § 404, Subpart P, App. 1.

symptoms and signs of the mental disorder, and despite the ongoing treatment the claimant has only achieved marginal adjustment.[74]

Listing 12.06 includes anxiety and obsessive-compulsive disorders and criteria A, B, and C must be met.[75]

Plaintiff's Listings 12.04 and 12.06 argument is again based on his earlier arguments that the ALJ erroneously discounted the opinions of Dr. Marks, Dr. Johansen, and Dr. Barnard. As explained above, the ALJ rationally found that Plaintiff's mental-health conditions did not include marked restrictions, but rather a mild limitation with understanding, remembering, or applying information, mild limitation with adapting or managing himself, moderate limitation with interacting with others, and moderate limitation with concentrating, persisting, or maintaining pace. The ALJ's articulated reasoning—in its entirety—was sufficiently specific, and her finding that Plaintiff failed to satisfy Listings 12.04 and 12.06 was supported by substantial evidence.[76]

## C.    Plaintiff's Symptom Reports: Plaintiff fails to establish consequential error.

Plaintiff argues the ALJ failed to provide valid reasons for rejecting his symptom reports. When examining a claimant's symptom reports, the ALJ must

---

[74] 20 C.F.R. 404, Subpart P, App. 1, Listing 12.00.G.

[75] *Id.* at Listing 12.06.

[76] SSR 17-2p.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

make a two-step inquiry. "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged."[77] Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection."[78]

Here, the ALJ found Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms inconsistent with the objective medical evidence, improvement with treatment, failure to participate in continued psychotherapy, misuse of medication, inconsistent statements, and significant daily activities.[79]

First, as to the ALJ's finding that Plaintiff's symptom reports were inconsistent with the objective medical evidence, symptom reports cannot be solely discounted on the grounds that they were not fully corroborated by the objective medical evidence.[80] However, objective medical evidence is a relevant factor in

---

[77] *Molina*, 674 F.3d at 1112.

[78] *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (quoting *Lingenfelter*, 504 F.3d at 1036).

[79] AR 21-23.

[80] *Rollins*, 261 F.3d at 857.

considering the severity of the reported symptoms.[81] As discussed above, in contrast to Plaintiff's reported disabling pain symptoms, the imaging of Plaintiff's spine show minimal degenerative disc disease and the treatment notes do not reflect neurological deficits such as motor weakness, atrophy, loss of muscle tone, or sustained interference with ambulation.[82] As to Plaintiff's reported disabling mental health symptoms, his mental status examinations are largely benign,

---

[81] *Id.* Objective medical evidence" means signs, laboratory findings, or both. 20 C.F.R. § 416.9-2(k).  In turn, "signs" is defined as:

> one or more anatomical, physiological, or psychological abnormalities that can be observed, apart from [the claimant's] statements (symptoms). Signs must be shown by medically clinical diagnostic techniques. Psychiatric signs are medically demonstrable phenomena that indicate specific psychological abnormalities, e.g., abnormalities of behavior, mood, thought, memory, orientation, development, or perception and must also be shown by observable facts that can be medically described and evaluated.

*Id.* § 416.902(l). Evidence obtained from the "application of a medically acceptable clinical and laboratory diagnostic technique, such as evidence of reduced joint motion, muscle spasm, sensory deficits, or motor disruption" is considered objective medical evidence. 3 Soc. Sec. Law & Prac. § 36:26, Consideration of objective medical evidence (2019).

[82] AR 22 (citing, e.g., AR 333, 851, 327, 392, 395, 398, 401, 404, 417, 616-17, 622, 627, 631, 635, 641-42, 645-46, & 649).

absent observed anxiety and at times poor judgment and insight.[83] The ALJ's finding that Plaintiff's disabling symptom reports are inconsistent with the objective medical evidence is supported by substantial evidence and is a relevant factor for the ALJ to consider when weighing Plaintiff's symptom reports.

Second, the ALJ's finding that Plaintiff's reported symptoms improved with treatment is rational and supported by substantial evidence. The ALJ highlighted that the physical therapy records reflect decreased back pain and increased lumbar range of motion.[84] In addition, treatment records reflect that Plaintiff's anxiety lessened when he restarted valium and continued with his psychotherapy treatment.[85] That Plaintiff's physical and mental health improved with treatment is a clear and convincing reason for the ALJ to discount Plaintiff's reported disabling symptoms.[86]

Third, the ALJ discounted Plaintiff's reported physical and mental health symptoms because of failure to comply with treatment. Noncompliance with medical care or inadequately explained reasons for failing to seek medical

---

[83] AR 23 (citing AR 471-72, 477-78, 501-02, & 614-720).

[84] AR 22 (citing AR 727 ("Patient had been progressing fairly well with PT.")).

[85] AR 492.

[86] *See Morgan v. Comm'r of Social Sec. Admin.*, 169 F.3d 595, 599-600 (9th Cir. 1999) (considering evidence of improvement).

treatment cast doubt on a claimant's subjective complaints.[87] Here, the ALJ highlighted that Plaintiff did not return to psychotherapy for several months after his initial session.[88] However, Plaintiff's next session after his initial February 29, 2016 session was scheduled for April 5, 2016.[89] It is not clear why, but Plaintiff did not attend that scheduled session; yet, he did attend on May 24, 2016, and June 23, 2016.[90] Plaintiff then had another evaluation in September 2016, and then fairly consistently attended bimonthly sessions after that until August 2017 when he transitioned to monthly sessions.[91] However, within a month, Plaintiff requested that his mental health sessions return to bi-monthly sessions.[92] On this record, the ALJ's finding that Plaintiff failed to participate in mental-health treatment is not supported by substantial evidence. However, because the ALJ's decision to discount Plaintiff's reported mental-health symptoms is supported by other clear and convincing reasons, this error is not consequential.

---

[87] *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989).

[88] AR 22-23.

[89] AR 345-46.

[90] AR 380-83.

[91] AR 453-570.

[92] AR 481 & 516.

Fourth, the ALJ highlighted the record reflected opioid dependence and misuse of medications.[93] Drug-seeking behavior can be a clear and convincing reason to discount a claimant's reported symptoms.[94] Here, the record supports the ALJ's finding that the record reflected aberrant drug use.[95] Moreover, as the ALJ noted, Plaintiff's pain management provider recommended that Plaintiff no longer be on opiates for his back pain.[96] Nonetheless, about the time that Plaintiff was tapering off opiates, he switched pain management providers, and he again began using opioids.[97] That the record reflected misuse of medications is a clear and convincing reasons to discount Plaintiff's reported symptoms.

------

[93] AR 22.

[94] *See Edlund v. Massanari*, 253 F.3d 1152, 1157 (9th Cir. 2001) (holding that evidence of drug seeking behavior undermines a claimant's reported symptoms); *Gray v. Comm'r, of Soc. Sec.*, 365 F. App'x 60, 63 (9th Cir. 2010) (recognizing that evidence of drug-seeking behavior is a valid reason for discounting a claimant's symptom claims).

[95] AR 391-92, 394-95, 397-98, 634-35, & 676-79.

[96] AR 635.

[97] AR 844 ("Patient was seeing Dr. Deckard at lynx for his pain management and states he wanted to take him off the pain medication."); *see also* AR 810-50 (prescribing hydrocodone).

1

2            Fifth, the ALJ discounted Plaintiff's symptoms because of inconsistent

3    statements and significant activities. An ALJ may discount a claimant's symptom

4    reports on the basis of inconsistent statements or also performing exertional or

5    non-exertional functions for a substantial part of the day.[98] Here, the ALJ

6    highlighted that 1) Plaintiff sought mental-health treatment in February 2016

7    primarily for lying rather than anxiety or depression as he testified; 2) during a

8    May 2016 consultative examination Plaintiff reported that he stopped working due

9    to back pain (not his anxiety); 3) Plaintiff was looking for work that involved

10   driving a fork lift, which is inconsistent with his reported physical and mental

11   limitations; 4) Plaintiff reported an ability to do his own daily activities, chores,

12   and grocery shopping once per month, which conflicts with his testimony that he

13   had difficulty leaving the house and being around people; and 5) Dr. Nestler noted

14   that Plaintiff's statements were inconsistent at times during her examination and

15   she suspected that Plaintiff was exaggerating some of his mental-health

16   symptoms.[99] Because the ALJ discounted Plaintiff's symptom reports for other

17

18   ―――――――――――――

19   [98] *See Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996) (The ALJ may consider

20   "ordinary techniques of credibility evaluation," such as reputation for lying, prior

21   inconsistent statements concerning symptoms, and other testimony that "appears

22   less than candid."); *Molina*, 674 F.3d at 1113 (activities of daily living).

23   [99] AR 22-23.

clear-and-convincing reasons that are supported by substantial evidence, the Court need not review whether these reasons are supported by substantial evidence.

In summary, Plaintiff fails to establish the ALJ erred by discounting his symptom reports.

## D.    Step Five: Plaintiff fails to establish error.

Plaintiff argues that the ALJ's hypothetical failed to consider all his limitations, including his unproductiveness, absenteeism, need for special supervision to perform routine tasks, and need to lie down for 30 to 60 minutes twice per day. This argument merely restates Plaintiff's earlier allegations of error, which are either not supported by the record or are not consequential. Accordingly, the ALJ's hypothetical properly accounted for the limitations supported by the record.[100]

## V.    Conclusion

Accordingly, **IT IS HEREBY ORDERED**:

1.    Plaintiff's Motion for Summary Judgment, **ECF No. 16**, is **DENIED**.

2.    The Commissioner's Motion for Summary Judgment, **ECF No. 17**, is **GRANTED**.

3.    The Clerk's Office shall enter **JUDGMENT** in favor of Defendant.

---

[100] *See Magallanes v. Bowen*, 881 F.2d 747, 756-57 (9th Cir. 1989) (holding it is proper for the ALJ to limit a hypothetical to those restrictions supported by substantial evidence in the record).

1

2
      4.      The case shall be **CLOSED**.

      **IT IS SO ORDERED.**  The Clerk's Office is directed to file this Order and

3
provide copies to all counsel.

4
      **DATED** this 10th day of June 2020.

5

6
                            s/Edward F. Shea
                           EDWARD F. SHEA

7
                   Senior United States District Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23